Coal Co. *v.* Land Co.

(*Knoxville.*    November 17,  1900.)

CORPORATIONS. · *Rights of creditors of insolvent concern defined.*

Where a corporation—viz., a land company—mortgaged its property to secure a proposed bond issue of $25,000 to raise funds to pay debts, and sold and issued of this amount only $11,250, and these to its directors and stockholders at par, and was unable to sell the remainder of the issue, these bondholders, in settlement of the company's affairs as an insolvent concern, are entitled, as against general creditors, to payment in full out of the proceeds of the mortgaged property, if sufficient for that purpose, and not merely to payment out of same in the proportion that the actual bond issue of $11,250 bore to the proposed bond issue of $25,000.

---

FROM  CAMPBELL.

---

Appeal from Chancery Court of Campbell County. HUGH G. KYLE, Ch.

J. E. JOHNSTON and H. K. TRAMMELL for Coal Co.

E. H. POWERS and INGERSOLL & PEYTON, *contra.*

McALISTER, J.    The original bill in this cause was filed and sustained as a general creditors' bill

for the purpose of winding up the affairs of defendant company as an insolvent corporation. The only question presented to this Court upon the record is one of priority between a certain judgment creditor of said corporation and its mortgage bondholders.

The facts necessary to be stated, as found by the Court of Chancery Appeals, are substantially as follows:

April 1, 1893, the defendant company executed a mortgage or deed of trust to George W. Welsh, of Boyle County, Ky., to secure the payment of its bonds of the denomination of $50 each, amounting in the aggregate to $25,000, which its board of directors authorized to be issued and sold for the purpose of paying its indebtedness contracted in the purchase of lands and for other purposes. The bonds thus secured were dated April 1, 1893, and bore interest at six per cent., payable semiannually at the Farmers' National Bank, of Danville, Kentucky. The principle of said bonds was also made payable at said bank, and matured April 1, 1898. The mortgage or deed of trust to Welsh, embodying a form of the bonds issued, contained this recital:

"This bond is one of a series of 500, aggregating $25,000, issued in pursuance of an order of the board of directors of said London & New York Land Co., passed February 15, 1893."

When these bonds were issued the complainant,

the East Tennessee Coal Co., had a suit pending against the London & New York Land Co., and on November 10, 1893, it recovered a judgment against the latter company for $8,552.51 and costs. July 2, 1894, $2,360 were paid on this judgment. It is practically conceded, says that Court, that complainant company can assert no lien by virtue of its judgment, and it is certain that the mortgage was properly registered before the complainant company fastened any other lien on the property of defendant. That Court, continuing, says:

"These bonds of the defendant company—that is, $11,250—were issued for the purposes stated in the mortgage, and as disclosed by the proof, in order to raise money with which to pay the debts of the company. Its indebtedness at the time was about $25,000, and the authorized issue of bonds at par would have liquidated this indebtedness. It was the idea and purpose at the time it was determined to issue the bonds for the stockholders of the company to take 25 per cent. of their respective holdings in stock in the bonds, and thus the whole authorized issue would be taken. A number of the stockholders, however, either from inability or because they were becoming apprehensive as to the financial success of the company, refused to carry out the arrangement and take the bonds. Certain stockholders did take bonds under this arrangement amounting, as stated, to $11,250. The other $13,750 of the authorized

issue were never issued and put upon the market. It appears from the proof that the officers of the company were entirely willing to sell the remainder of these bonds, but were unable to do so. The stockholders taking the $11,250 of the bonds paid par for the same, and the money thus realized was used in paying debts and expenses of the company, and interest on the bonds thus disposed of, excepting $2,000 that was lost by the failure of a bank in Kentucky, in which something over $4,000 was deposited. . . . So far as is disclosed by the record, the officers expected, when the $11,250 of bonds were taken, that the remainder could be disposed of and the money realized from them applied to the payment of the debts of the company. The parties taking the $11,250 of bonds were stockholders, and some of them directors of the defendant company.

"After the failure of the company to dispose of the remainder of its unauthorized issue of bonds, it made no further efforts to secure or pay the debt of complainant."

The outstanding indebtedness of the company at the time this case was tried, exclusive of the bonds issued and sold, amounted to $15,000 or $18,000. Its properties, under the evidence, will not pay the $11,250 of bonds.

Now, it is insisted by complainant that its judgment against defendant company is of equal dignity with the claims of the bondholders and

entitled to share ratably with them in the properties of the company covered by the mortgage. In support of this position it is argued that when each stockholder subscribed for a certain number of the bonds of the defendant company it was with the understanding that bonds amounting to $25,000 would be issued and sold to pay the debts of the company, and that creditors who received no part of the $25,000 should stand as high as the bondsmen furnishing the money; that each holder of bonds issued is only secured under the mortgage in the proportion that his bonds bear to the whole amount authorized to be issued and secured by the mortgage. Otherwise stated, each bond is one of the series, and the holder of the bonds is secured by the mortgage to the extent of his aliquot part of the property conveyed considered as a security for the whole series.

It is conceded by learned counsel in his able argument that the rule would be different if the issue of bonds was not definitely known and determined. It is also conceded that if there was nothing in the trust deed or in the bond itself to put the holder upon notice just what his proportionate interest in the assets was, then he might subject the entire assets included in the trust deed to the satisfaction of his bond. Counsel cites in support of his position Thompson's Commentaries on the Law of Corporations, viz.:

"The proportionate interest of each bondholder in the proceeds of the sale is to be determined by the contract of hypothecation which is embraced in the mortgage and in the bonds, when read together as one contract. Under ordinary railroad mortgages (which are issued as a security for the whole number of a series of bonds, which number is definitely stated in the mortgage) each bond carries with it only a fractional interest in the proceeds of the sale of the property, to be determined by the proportion which its amount bears to the whole amount secured by the mortgage, whether the whole amount has been issued or not. Thus, if the mortgage (trust deed) is created to secure a series of bonds of the sum of $1,000 each, amounting in the aggregate to ten million dollars, upon a distribution of the proceeds arising from a sale to foreclose the mortgage, each bondholder will be entitled to the same proportion which he would receive . . . if the whole ten thousand of the bonds had been in fact issued." *Ib.,* sec. 6229.

"Such a mortgage is a security for the whole number and for each and every bond recited in it; by the terms of the instrument the bonds stand in equal protection—each bond carries only a fractional interest of the property mortgaged." Sec. 6229.

The contract with the individual bondholder is no more than that he shall have his due propor-

tion of the security the mortgage on its face im-
plies.    Thompson's Commentaries on the Law of
Corporations, Vol. 5, sec. 6228. The cases cited
by Mr. Thompson for his text are *Barry* v. *Mis-*
*souri R. R.,* 34 Fed. Rep., 829, and *Hodges'*
*Appeal,* 84 Pa. St. 359, 362.

We have examined the cases cited by Mr.
Thompson in support of the text, and find they
have no bearing on the question presented in this
case. In *Barry* v. *Railroad,* 34 Fed. Rep., 829,
Judge Wallace states the rule thus: "Where a
mortgage is a security for the whole number of
a series of bonds, in a distribution of the pro-
ceeds of the sale of the mortgaged property, each
bond carries only a fractional interest in the pro-
ceeds of the property, to be ascertained by the pro-
portion which its amount bears to the whole
amount secured."

This, we take it, is a statement of the general
rule that where the mortgage security is insuffi-
cient to pay the entire amount of bonds secured,
each bondholder will share in the distribution of
the proceeds of the security in the proportion
which his holdings bear to the whole amount se-
cured. But Mr. Thompson has introduced into his
text a feature not found in the case—namely, that
this rule applies whether the entire series of bonds
be issued or not, or whether they are intended
to be issued or not. In *Barry* v. *Railroad, supra,*
the whole amount of bonds had been actually is-

sued, but the railroad had purchased part of them back before maturity and had reissued them, and the question was whether these reissued bonds or bonds for which they were exchanged would participate in the mortgage security, or, in other words, whether the lien of the mortgage would be affected by the substitution of the new bonds. The Court held there was no principle of law of corporations or mortgages which forbids a corporation that has issued a series of mortgage bonds from purchasing part of them back and reissuing them before maturity, when the financial interests of the corporation will be thereby promoted, unless the organic law of the corporation forbids the exercise of such a power. If it is lawful for the corporation to do this, · it is wholly immaterial whether it pays money upon such a purchase or exchanges other bonds instead. The Court held that in such a case the lien of the mortgage would not be extinguished unless, of course, payment was made with intent to extinguish the debt.

In *Chaflin* v. *Railroad,* 8 Fed. Rep., it appeared that certain mortgage bonds had been acquired by the railroad in its refunding operations and the question was whether the company, after having acquired them, could keep them alive and reissue them so that they would carry with them their original mortgage lien. Chief Justice Waite, who delivered the opinion of the Court, said: "As

against other bondholders secured by the same mortgage, I cannot believe there is a doubt of the power of the company to put out and keep out the entire issue up to the time the bonds became due. The contract with the individual bondholder was no more than that he shall have his due proportion of the security the mortgage on its face implies." In that case it also appeared that the entire series of bonds had been issued, and the question was in respect of the right of reissued bonds to share in the mortgage security.

The other case cited by Mr. Thompson for his text is *Hodges' Appeal,* 84 Pa. St., 359. In that case it appeared that one Harmon executed and delivered to trustees a mortgage on property to secure the payment of two hundred hands, each for the sum of five hundred dollars. The property to be distributed under the mortgage realized $6,894.98. It appeared that the entire series of bonds, two hundred in number, had in fact been issued. The real question in that case was whether certain claimants were *bona fide* holders of the bonds on account of certain informalities in their acquisition.

The Court held that where a mortgage is a security for the whole number of a series of bonds, in a distribution of the proceeds of the mortgaged property, the holders of the bonds share *pro rata* in the distribution, and if a holder of

22 p—4

a bond is entitled to its proceeds other holders cannot set up any informality · in the manner of its acquisition.

In the case at bar more than one-half · of the series of bonds were in fact not issued, nor were they withheld by the corporation for the purpose of being issued or manipulated for its own purposes at some future time, as frequently occurs in railroad securities.

Now, in such a case it would be a strange doctrine to hold that each separate bondholder is only secured by the mortgage to the extent of his aliquot portion of the property covered, to be determined by the proportion his bond holdings bear to the whole amount originally contemplated to be issued, but which were not in point of fact issued.

We think the true rule is that the security inures to the benefit of each bondholder in the proportion which his bondholdings under the mortgage bear to the entire amount actually issued and intended to be issued.

Affirmed.